IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

AGNES M. BROWN and DORETHA D.      *
WHITE
                                   *
        Plaintiffs,
                                   *
vs.
                                   *    CASE NO. 3:05-CV-89 (CDL)
GREENE COUNTY, GEORGIA, and
BYRON LOMBARD, County Manager      *
of Greene County, Georgia, in
his Individual Capacity, and       *
BRIAN BURGAMY, Director of
Operations of Green County         *
EOC/E-911 in his Individual
Capacity,                          *

        Defendants.                *

O R D E R

   The above captioned employment discrimination lawsuit arises

from Defendants'[1] alleged maintenance of a hostile work environment

as well as Defendants' alleged discriminatory and retaliatory

termination of Plaintiffs' employment.  Plaintiffs bring their claims

pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"),

42 U.S.C. § 2000e, and the Equal Protection Clause of the Fourteenth

Amendment.  Specifically, Plaintiffs claim that they were terminated

because of their race and in retaliation for filing complaints of

discrimination with the Equal Employment Opportunity Commission

("EEOC").  Additionally, Plaintiffs claim that Defendants created a

_____

   [1]The Court refers to all three Defendants collectively as
"Defendants."

racially and sexually hostile work environment. Presently pending before the Court are Defendants' motions for summary judgment (Docs. 26, 27). For the following reasons, Defendants' motions are granted.

BACKGROUND

Agnes M. Brown and Doretha D. White (collectively "Plaintiffs") were employed as 911 dispatchers by the Greene County, Georgia, E-911 office in 2004. Plaintiffs, who are both white females, typically worked the night shift together at the E-911 office. Their night shift supervisor was an African-American female, Anne Harrison ("Harrison"). The day shift supervisor was Yolanda Callaway ("Callaway"), also an African-American female. On September 8, 2004 Plaintiffs were suspended, and on September 15, 2004 Plaintiffs were terminated for mishandling calls, insubordination, and failure to follow procedure. Plaintiffs claim that they were terminated because of their race and in retaliation for their complaints about Defendants' alleged unlawful employment practices. Plaintiffs further maintain that Defendants' asserted reasons for their termination were pretext for discrimination.

Specifically, Plaintiffs contend that Harrison created a sexually and racially hostile work environment. Plaintiffs claim that Harrison would use explicit language, would talk about her sexual encounters, would allow staff members to watch pornographic television shows in the E-911 operators room, and would use racially offensive language. Additionally, Plaintiffs claim that when they

2

complained about this hostile work environment, they were disciplined and ultimately fired. Plaintiffs also claim that Harrison treated African-American employees more favorably than Caucasian employees. Plaintiffs contend that when they complained about this disparate treatment, they were fired.

Plaintiffs admit that Harrison did not make the decision to fire Plaintiffs. As a supervisor, Harrison only had the authority to recommend discipline to Brian Burgamy ("Burgamy"), the director of communications and a white male. Burgamy also did not have the authority to terminate Plaintiffs. Burgamy could suspend Plaintiffs and then recommend their termination to Byron Lombard ("Lombard"), the county manager who is also a white male. Plaintiffs claim, however, that Greene County is liable for discrimination because Harrison, Burgamy, and Lombard engaged in disparate treatment and created a hostile work environment.

On October 7, 2005, Plaintiffs filed this action claiming disparate treatment, hostile work environment, violations of the First Amendment, and retaliation. Plaintiffs have narrowed their allegations and now contend that Greene County is liable under Title VII, the Equal Protection Clause, and 42 U.S.C. § 1983 for race discrimination, retaliation, racial harassment, and sexual harassment. Plaintiffs also claim that Defendants Burgamy and Lombard are liable in their individual capacities for race discrimination in violation of the Equal Protection Clause.

3

Defendants respond that Plaintiffs' claims are without merit and that Defendants Burgamy and Lombard are entitled to qualified immunity.

DISCUSSION

## I.  Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial."  *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact.  *Id.* at 324.  A fact is material if it "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party.  *Id.*  In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it

is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## II.  Title VII Claims

Plaintiffs assert claims for discrimination and retaliation in violation of Title VII.  First, Plaintiffs contend that they were subjected to disparate treatment because of their race and that this discrimination resulted in their suspension and termination.  Second, Plaintiffs argue that they were harassed because of their race and sex and that this harassment was so severe that it created a hostile work environment.  Finally, Plaintiffs assert a claim for retaliation under Title VII.

### A.  Disparate Treatment

In order to bring a claim for disparate treatment based on circumstantial evidence, the plaintiff must first establish a prima facie case of discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If the plaintiff can support a prima facie case, a presumption of discriminatory intent is created.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  The burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for the alleged discriminatory behavior. *McDonnell Douglas*, 411 U.S. at 802; *Rojas v. Florida*, 285 F.3d 1339, 1342 (2002).  If the defendant carries this burden, the presumption of discrimination is rebutted.  *Burdine*, 450 U.S. at 255.  The plaintiff can then still defeat summary judgement by creating a

genuine issue of material fact as to whether the defendant's legitimate non-discriminatory reason is pretext for a discriminatory decision. *McDonnell Douglas*, 411 U.S. at 804; *Rojas*, 285 F.3d at 1342.

*1. Prima Facie Case*

In order to establish a prima facie case of race discrimination, Plaintiffs must establish (1) that they are members of a protected class, (2) that they were qualified for their jobs, (3) that they were each subjected to an adverse employment action, and (4) that they were replaced by someone outside their protected class or were treated differently than similarly situated employees outside their protected class. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (2004); *Hawkins v. CECO Corp.*, 883 F.2d 977, 982 (11th Cir. 1989). Defendants do not dispute that Plaintiffs are members of a protected class and suffered adverse employment actions. Furthermore, for purposes of this Order, the Court assumes that Plaintiffs were qualified for their positions. However, in order to establish a prima facie case of race discrimination, Plaintiffs must establish that they were replaced by persons outside their protected class or that they were treated differently than similarly situated employees.

Here, neither Plaintiff has produced evidence that she was replaced by an individual outside of her protected class. Therefore, Plaintiffs must show that a similarly situated employee was treated differently than both Plaintiffs. In order for an employee to be

similarly situated to the plaintiff, the employee must be "similarly situated in all relevant respects." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003)(quoting *Holifield v. Reno,*115 F.3d 1555, 1562 (11th Cir.1997)). A comparator employee should be "involved in or accused of the same or similar conduct" and be "disciplined in [a] different way[]." *Id.* Additionally, the comparator employee must have "very similar job-related characteristics" to the plaintiff, and be "in a similar situation" to the plaintiff. *MacPherson v. University of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991).

Plaintiffs claim that two employees, Cheryl Brown[2] and Elaine Armour, were similarly situated employees outside the protected class, who engaged in conduct similar to Plaintiffs, but were not terminated. For the following reasons, the Court finds that Cheryl Brown and Elaine Armour are not similarly situated with Plaintiffs.

Cheryl Brown and Elaine Armour are both African-American females and both have the same job title as Plaintiffs. Therefore, to the extent that they are outside Plaintiffs' protected class and have similar job responsibilities, Cheryl Brown and Elaine Armour are proper comparators to Plaintiffs. Plaintiffs must also show,

---

[2]Throughout the record, Plaintiffs have alternated between spelling Cheryl Brown's name "Cheryl" and "Sheryl." Since the Greene County records spell Cheryl Brown's name C-H-E-R-Y-L, the Court adopts that spelling for this Order. (Pls.' Statement of Material Facts, Ex. 10.) The Court notes, however, that "Cheryl Brown" and "Sheryl Brown" are the same person.

however, that their asserted comparators were "involved in or accused of the same or similar conduct and [were] disciplined in different ways." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (quotation marks and citation omitted). "In order to satisfy the similar offense prong, the comparator's misconduct must be nearly identical to the plaintiff's in order to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiffs assert that Cheryl Brown and Elaine Armour "were treated more favorably on the conduct which allegedly led to Plaintiffs' suspension and termination." (Pls.' Substituted Mem. in Opp'n to Defs.' Mots. for Summ. J. 7.) In order to support this assertion, Plaintiffs claim that (1) Harrison admitted that Cheryl Brown and Elaine Armour had attitude problems, (2) Harrison and Burgamy admit that Cheryl Brown had attendance problems, (3) Burgamy allowed Cheryl Brown and Elaine Armour to run personal errands while at work, and (4) Burgamy told Cheryl Brown that she "had the rudest disposition [he] had ever seen." (Burgamy Dep. 204: 7-8.)

Plaintiffs' arguments assume that Plaintiffs were fired because of their attitudes and attendance. The evidence in the present record does not support this assumption. Harrison stated that she recommended discipline because Plaintiffs mishandled calls and that the Plaintiffs' attitudes, although they came up in discussion with

8

Burgamy, were not an issue that led to their termination. (Harrison Dep. 141:22-25.) Burgamy maintains that he recommended Plaintiffs' suspension and termination because of their mishandling of calls, insubordination, and a failure to follow procedure. (Burgamy Dep. 87, Ex. 3, July 25, 2006.) Plaintiffs have not produced any evidence to show that Cheryl Brown or Elaine Armour engaged in similar conduct to Plaintiffs and were punished in different ways. Consequently, Plaintiffs have failed to establish a prima facie case of race discrimination.[3]

### 2. Other Evidence of Discrimination

"If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Wilson*, 376 F.3d at 1092 (citation omitted). Plaintiff Brown claims that the fact that she was fired, the fact that Burgamy associates with African-American females, the fact that Burgamy likes to dress in "clothes that black people like to wear," the fact that Burgamy has two African-American supervisors, and the fact that he ignored her complaints concerning

---

[3]The Court also notes that Harrison was not Cheryl Brown or Elaine Armour's supervisor. (Harrison Dep. Ex. 2, July 21, 2006.) Regarding Cheryl Brown's conduct, Harrison explains that Brown was "not [her] employee . . . [b]ut [Harrison is] sure she's been disciplined for her attendance." (Harrison Dep. 140:13-15.) Harrison also explained that she did not know if Cheryl Brown was given more leeway regarding her tardiness because Harrison "was not [Cheryl Brown's] supervisor." (Harrison Dep. 216:10.) The record also shows that after Plaintiffs' terminations, Cheryl Brown was disciplined and counseled for her attitude and attendance by her supervisors, Callaway and Rita Fulcher, and by Burgamy. (Pls.' Statement of Material Facts, Ex. 10.)

radios and computer equipment shows that he discriminated against her because of her race.[4]  (Brown Dep. 179:25-183:4, June 28, 2006.)  The mere fact that Plaintiff Brown was fired does not in any way show that she was fired because of her race.  Furthermore, Plaintiff Brown's assertion that Burgamy's association with African-American females and his preference of dressing in "black clothes" somehow shows that she was fired because she is Caucasian is absurd.  The sole concern of this Court is "whether unlawful discriminatory animus motivates a challenged employment decision."  *Wilson*, 376 F.3d 1092 (citation omitted).  Even if Plaintiff Brown did not mishandle calls or fail to follow procedure—as is claimed by Defendants—but was instead fired because Defendants did not like her, it would be inappropriate for this Court to second-guess that decision unless Plaintiff Brown provided some evidence that that decision was in fact an unlawful employment practice.  *Id.*

Similarly, Plaintiff White has failed to provide other evidence of discrimination sufficient to defeat summary judgment.  Plaintiff White claims that Burgamy discriminated against her because he "took supervisor [Harrison], a black female, took her word . . . about so-called complaints, mishandling calls," and he failed to approach

---

[4]Plaintiffs have submitted a plethora of declarations and exhibits concerning Burgamy and Harrison's treatment of other employees for conduct that was not used as a reason to terminate Plaintiffs.  For example, Plaintiffs claim that Burgamy allowed African-American employees to sleep on the job.  This evidence is irrelevant for the issue before the Court—whether Defendants' decisions to terminate Plaintiffs were motivated by race.

Plaintiff White about the allegations against her. (White Dep. 109:24-110:7, July 24, 2006.) Assuming Plaintiffs have presented evidence that shows that Harrison harbors a discriminatory animus against Plaintiffs, it is true that Burgamy cannot merely rubber stamp Harrison's decision to suspend or terminate them. *See Llampallas v. Mini-Circuits, Lab, Inc.,* 163 F.3d 1236, 1249 (11th Cir. 1998) (explaining that employer can be liable for discrimination if a decision maker "acted in accordance with the [discriminator's] decision without [] evaluating the employee's situation") (citation omitted). Here, however, Harrison did not recommend either suspension or termination, only discipline, and in fact said that she would hate for anyone to lose her job. (Burgamy Dep. 85:8-13, 154:5-9; Harrison Dep. 133:2-5, 185:11-12.) Additionally, Burgamy explained that he reviewed Plaintiffs' call reports, personnel files, and training files. (Burgamy Dep. 88:13-19, 109:8-13.) Consequently, Burgamy's failure to consult either Plaintiff White or Plaintiff Brown in making his decision to recommend termination does not show that his decision was motivated by race.

Furthermore, Plaintiffs have argued that Lombard discriminated against them by engaging in "only the barest surface investigation of the charges against Plaintiffs." (Pls.' Substituted Mem. in Opp'n to Defs.' Mots. for Summ. J. 14.) They also claim that Lombard blocked Plaintiffs from reviewing the charges against them. (*Id.*) Plaintiff White, however, admits that Lombard had a thirty to forty-five minute

11

meeting with her before she was terminated. (White Dep. 107:22-25.)
Additionally, at that meeting, Plaintiff White states that Lombard
told her that she refused to report a power failure and that there
were police officer complaints about her performance. (White 106:7-
15.) Plaintiff Brown also admits that Lombard met with her before
her termination. (Brown Dep. 169:22-25.)

Lombard states that once a recommendation for termination is
made, he will review the employee's files, question the supervisor,
sometimes question other employees, and interview the employee
recommended for dismissal in order to give the employee an
opportunity to "provide any input they can to explain their
position." (Lombard Dep. 30:1-12, July 19, 2006.) In the case of
Plaintiffs, Lombard reviewed their call reports, disciplinary
records, performance reviews, interviewed each Plaintiff
individually, and interviewed Burgamy. (Lombard Dep. 29:12-23;
37:17-20; 39:13-40:2.) Lombard also stated that he did not interview
Harrison or get any information directly from Harrison. (Lombard
Dep. 39:18-21.) This uncontested evidence shows that Lombard
conducted an independent investigation before making the decision to
terminate Plaintiffs. Plaintiffs' unsupported and self-serving
statements that Lombard failed to conduct an investigation do not
create a genuine issue of fact as to whether Lombard terminated
Plaintiffs because of their race, or whether Lombard rubber stamped

Burgamy or Harrison's alleged race-motivated decision to terminate Plaintiffs.

Since Plaintiffs have failed to present a prima facie case of disparate treatment or show other evidence of racial discrimination, Defendants' motions for summary judgment on Plaintiffs' disparate treatment claims are granted.

B.  Hostile Work Environment

Plaintiffs also claim that they were subjected to a sexually and racially hostile work environment. "A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Galloway v. Ga. Tech. Auth.*, 182 Fed. App'x 877, 882 (11th Cir. 2006) (quotation marks and citation omitted). The environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

For their hostile work environment claim to survive summary judgment, Plaintiffs must establish a prima facie case of a hostile work environment. Therefore, Plaintiffs must show (1) that they belong to a protected group; (2) that they were subjected to unwelcome harassment; (3) that the harassment complained of was based

13

on their race and/or gender; (4) that "the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) [that the harassment is] a basis for holding the employer liable." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999). Assuming, without deciding, that the first three elements of a prima facie case have been met, Plaintiffs' claims for a hostile work environment fail because the harassment was not sufficiently severe or pervasive and did not alter the terms or conditions of Plaintiffs' employment.

In order for conduct to be severe or pervasive, a plaintiff must show that (1) she subjectively perceived the harassment as severe and (2) that this subjective perception was objectively reasonable. *Mendoza*, 195 F.3d at 1246; *see also Harris v. Forklift Sys, Inc.*, 510 U.S. 17, 21-22 (1993). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Mendoza*, 195 F.3d at 1246 (internal quotation marks and citation omitted). In making a determination on the objective severity of the harassment, the court looks at "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's

job performance." *Galloway*, 182 Fed. App'x at 882 (quotation marks and citation omitted).

### 1. *Sexually Hostile Work Environment*

Plaintiffs claim that the following comments and actions created a sexually hostile work environment:

Plaintiff Brown—(1) Plaintiff Brown was told that she has a "black booty"; (2) Plaintiff Brown pulled up into the parking lot and saw Burgamy and Callaway holding an item of a sexual nature, and Callaway tried to hide the item; (3) The television in the 911 Center continuously showed sexually explicit television shows; (4) In Plaintiff Brown's presence, Burgamy spoke about his sexual encounters; (5) Callaway and Harrison would discuss their sex lives around Plaintiff Brown.

Plaintiff White—(1) On four occasions Harrison and other employees watched pornographic television shows on the television in the 911 Center; (2) Harrison, Callaway, and other employees would engage in discussions, including graphic descriptions, about their sexual encounters; (3) Callaway called a dating service, pointed her phone toward White and stated that she had a "white one" for Plaintiff White; (4) Burgamy referred to Plaintiff White as "slut-retha."

These statements and this conduct, although crude and unprofessional, do not rise to the level of severe or pervasive under Title VII. "Simple teasing, offhand comments, and isolated incidents

(unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788. For example, the "sporadic use of abusive language, gender-related jokes, and occasional teasing" do not give rise to a hostile work environment under Title VII. *Id.* The comments that Plaintiffs complain of were not physically threatening or humiliating. For the most part, the statements were not even directed at Plaintiffs.[5] The statements that were directed directly at Plaintiffs were not of such a nature as to rise to the level of being severe or pervasive. Furthermore, there is no evidence that shows that these statements changed the terms or conditions of Plaintiffs' employment.[6]

---

[5]Burgamy did directly call Plaintiff White "slut-retha." Plaintiff White testified that he referred to her as "slut-retha" frequently during a previous term of employment at the Greene County 911 Center, from 1997-2001. (White Dep. 86:18-24.) Despite the fact that Burgamy had frequently called her this name, Plaintiff White returned to work for Burgamy in 2003. In order for a statement to be severe or pervasive, Plaintiff White had to subjectively view it as such. If Plaintiff White had believed that the use of this nick name created a hostile work environment, the Court questions why Plaintiff White chose to return to the Greene County 911 center in 2003. Additionally, Plaintiff White states that Burgamy called her slut-retha once upon her return to the 911 Center, but that she "just kind of looked at him and walked on." (White Dep. 88:11-15.) This reaction and Plaintiff White's willingness to return to the 911 Center indicate that she did not subjectively view the statement as severe or pervasive.

[6]Regarding specifically the pornographic television shows, Plaintiffs claim that this did change the terms and conditions of their employment because it distracted them and made them unable to hear 911 and radio calls. However, Plaintiff White stated that the show was only shown on four different occasions when she was at the 911 Center and that another employee, Nicole Armour, was responsible for turning on the pornographic television show on two of those occasions. Additionally, on each occasion that it was on the television, she stated that it was only on for a few minutes. (White Dep. 42:21-53:25.) Although this type of programming is obviously inappropriate for an office environment, this does not rise to the level of severe or pervasive harassment that would create a hostile

16

Consequently, Plaintiffs have failed to establish a prima facie case of a sexually hostile work environment. Defendants' motions for summary judgment are hereby granted as to this claim.

### 2. Racially Hostile Work Environment

Plaintiffs claim that the following comments and actions created a racially hostile work environment:

Plaintiff Brown—(1) Plaintiff Brown was told that she has a "black booty"; (2) In response to questions she asked, Plaintiff Brown would be told that "it's a black thing"; (3) Harrison frequently made comments about white officers profiling African-American motorists.

Plaintiff White—(1) Harrison complained that white officers were profiling African-American drivers on I-20; (2) An African-American employee was referred to has a "ghetto dispatcher"; (3) Other employees referred to Plaintiff Brown as having a "black booty"; (4) While African-American employees were having a conversation, Plaintiff White would ask what they were talking about and they would respond that "it's a black thing"; and (5) The television in the 911 center would be turned to Black Entertainment Television by other employees."

"Discourtesy or rudeness should not be confused with racial harassment[,] and [a] lack of racial sensitivity does not, alone, amount to actionable harassment." *Faragher*, 524 U.S. at 787

---

work environment.

(citation and internal quotation marks omitted). While these statements may be rude, discourteous, and boorish, the Court finds that under this circuit's binding precedent they do not rise to the level of creating a hostile work environment. *Id.* These statements are neither sufficiently severe or pervasive to alter the terms or conditions of Plaintiffs' employment. Plaintiffs, therefore, have failed to establish a prima facie case of a racially hostile work environment and Defendants' motions for summary judgment are granted as to this claim.

C. Retaliation

Plaintiffs' final claims under Title VII are claims for retaliation. As in the disparate treatment and hostile work environment contexts, Plaintiffs must first establish a prima facie case of retaliation. If a plaintiff establishes a prima facie case, the defendant then has the burden of articulating a legitimate non-discriminatory reason for the challenged action. The plaintiff can then defeat summary judgment by creating a genuine issue of material fact as to whether the defendant's reason is merely pretext for discrimination. *Wright v. Southland Corp.*, 187 F.3d 1287, 1305 (11th Cir. 1999).

Here, in order to establish a prima facie case of retaliation, each Plaintiff must show (1) that she engaged in statutorily protected activity, (2) that she suffered an adverse employment action, and (3) that the adverse employment action is causally

related to the protected activity. *Wideman v. Wal-mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998). Additionally, although Plaintiffs need not prove that discrimination actually occurred to recover for retaliation, they must show that they "had a reasonable good faith belief that the discrimination existed." *Holifield*, 115 F.3d at 1566 (citation omitted). Plaintiffs claim that they engaged in statutorily protected activity when they complained about "race discrimination and sexually unwelcome workplace activity." (Pls.' Substituted Mem. in Opp'n to Defs.' Mots. for Summ. J. 13.) Additionally, Plaintiffs filed an EEOC complaint days before they were terminated.

For purposes of this Order, the Court finds that Plaintiffs engaged in statutorily protected activity when they complained about race discrimination and sexual harassment and when they filed their complaint with the EEOC. The Court further finds that Plaintiffs suffered adverse employment actions when they were terminated.

To avoid summary judgment, however, Plaintiffs must produce sufficient evidence from which a reasonable jury could conclude that there was a causal connection between their protected activity and the adverse employment actions. "In order to satisfy the 'causal link' prong of a prima facie retaliation case, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action." *Raney v. Vinson Guard Serv., Inc.*, 120

F.3d 1192, 1197 (citation omitted). Additionally, the plaintiff must show that the "agent who took the adverse action was aware of the plaintiff's protected expression." *Id.*

Here, Burgamy and Lombard are Greene County's agents who made the decisions to suspend and then terminate Plaintiffs. Thus, Plaintiffs must at a minimum produce evidence that Burgamy and Lombard were aware of their complaints and EEOC charge. Regarding Plaintiffs' general complaints about racial discrimination and sexual harassment, Plaintiff White never told Burgamy or Lombard that she believed she was subjected to sexual conversations or racially hostile comments. (White Dep. 91:14-18, 94:14-21.) Plaintiff Brown also states that she complained to her supervisors, but admits that she never complained directly to Burgamy about the sexual conversations or televison show because she "found it embarrassing to talk to him about it." (Brown Dep. 125:13-19, 133:4-7.) Additionally, although Plaintiff Brown claims she informed Lombard about the sexual conversations in a January 2004 written complaint, that complaint fails to mention any racial or sexual harassment. (Def. Greene County's Mot. for Summ. J. Ex. B.) Therefore, Plaintiffs have failed to show any causal link between their complaints about racial discrimination and sexual harassment and their suspension or termination.

Regarding their EEOC complaint, Plaintiffs have also failed to establish a causal connection between their activity and their

suspension or termination.  First, Plaintiffs were suspended and recommended for termination by Burgamy before they filed their EEOC complaint—they were suspended and recommended for termination on September 8 and the EEOC charges were filed on September 10.  Thus, their suspension and Burgamy's recommendation for termination could not have been in retaliation for filing the EEOC charge.  Second, Plaintiffs' argument that the temporal proximity between their filing the EEOC charge and their termination, alone, is enough to establish a causal connection is without merit.  In order to support such an argument, Plaintiffs would first have to provide evidence to show that Greene County, Burgamy, or Lombard were aware that Plaintiffs filed an EEOC charge "just five days before they were fired." (Pls.' Substituted Mem. in Opp'n to Defs.' Mots. for Summ. J. 13.)  Since Plaintiffs have failed to produce evidence to show that Defendants had been notified of Plaintiffs' EEOC charge, they have failed to establish the third prong of a prima facie case of retaliation.

Since Plaintiffs have failed to establish a prima facie case of retaliation, Defendants' motions for summary judgment on this claim are granted.

## IV.   Section 1983 Claims

Finally, Plaintiffs claim that the actions of Greene County, Mr. Lombard, and Mr. Burgamy violated their equal protection rights under Fourteenth Amendment of the Constitution by discriminating against Plaintiffs based on their race and by harassing Plaintiffs

because of their sex and race.  Plaintiffs assert this claim pursuant to 42 U.S.C. § 1983.

"When section 1983 is used as a parallel remedy for [a] violation . . . of Title VII, the elements of the two causes of action are the same." *Underwood v. Perry County Comm'n*, 431 F.3d 788, 793 (11th Cir. 2005).  Consequently, Plaintiffs' § 1983 claims fail for the same reason Plaintiffs' Title VII disparate treatment and hostile work environment claims fail.  Defendants' motions for summary judgment are granted as to Plaintiffs' § 1983 claims.

## CONCLUSION

As explained in this Order, Defendants' motions for summary judgment (Docs. 26, 27) are granted as to all of Plaintiffs' claims.

IT IS SO ORDERED, this 27th day of March, 2007.


S/Clay D. Land
                        CLAY D. LAND
                        UNITED STATES DISTRICT JUDGE